[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This civil action is an administrative appeal from a decision and order of the Commission for Human Rights (hereinafter simply "the Commission,") entered on April 26, 1990. The plaintiff is a corporate real estate agency using the trade name of Buy Rite Real Estate. The defendants are William T. Fennessee and the Commission. This action was filed on May 23, 1990. The Commission record was certified to this Court on July 2, 1991. Briefing was completed by the defendant William T. Fennessee on May 4, 1992. On September 29, 1992 the matter was assigned to this Justice for decision.
William T. Fennessee is a blind African-American. He was hired by Rhode Island College as a rehabilitation educator to begin teaching in September 1987. On August 11, 1987 a representative of Rhode Island College applied on his behalf to the plaintiff to rent an apartment at 64 Woonasquatucket Avenue, owned by a client of the plaintiff's. On August 23, 1987, Mr. Fennessee came to Rhode Island from Illinois. On the next day he went to the plaintiff's office with a check for the deposit on the apartment. The plaintiff refused to accept the deposit on the ground that the apartment was not ready for occupancy. Thereafter, the plaintiff suggested another apartment for Mr. Fennessee in another neighborhood "with someone more of his type." On August 27, 1987 the plaintiff rented the apartment to a sighted white male person. On August 31, 1987 the plaintiff advised Mr. Fennessee for the first time that the apartment had been rented to someone else because Mr. Fennessee had not furnished a timely deposit. The Commission did not accept as truthful the plaintiff's claim that it did not offer the apartment to Mr. Fennessee because he was late with his deposit check.
Jim Crow was alive and well in Rhode Island in 1987.
The plaintiff's argument that the Commission lacked jurisdiction over the complaint is utterly without merit. G.L.1956 (1984 Reenactment) § 34-37-5, as amended, in no uncertain terms empowers and directs the Commission to investigate complaints of housing discrimination, to hear and adjudicate disputed issues, to issue cease and desist orders and to bring actions in this Court to enforce compliance with the Fair Housing Practices Law (§§ 34-37-1, et seq.) Plaintiff's contention to the contrary is based on a mis-reading of § 34-37-4(c). SeeBrief of Appellant/Respondent, pp. 11-12.
Likewise, its argument that the Commission erred as a matter of law in holding it to be an agent of the owners is utterly incomprehensible. It was plainly an agent for the purpose of soliciting and presenting prospective tenants to the landlords. If parties like the plaintiff do not accept applications from members of a class protected by law from discrimination in housing they can go a long way to make discrimination in renting a lot easier for the landlords they represent. By presenting the landlord with the prospective white tenant, who came later, before the African-American blind prospective tenant, who came first and was fully qualified, the plaintiff engaged in unlawful discrimination. Since the Commission rejected its partial explanations as incredible, the plaintiff's conduct is as unexcused as it is inexcusable.
In a case involving a comparable statute pertaining to discrimination in employment (G.L. 1956 (1986 Reenactment §§28-5-1, et seq.) our Supreme Court outlined a four-element requirement to establish a prima facie case of prohibited discrimination. Newport Shipyard, Inc. v. Rhode IslandCommission for Human Rights, 484 A.2d 893, 898 (R.I. 1984).
Paraphrasing those elements to apply to this case, the complainant proved:
1. That he was an African-American and blind, and, thus, belonged to two protected classes under § 34-37-4.
2. That he applied to rent an apartment for which he was economically qualified and eligible, and had offered a deposit in the amount requested.
3. That the apartment was not rented to him.
4. That after his deposit was not accepted the apartment was rented to a person who was not a member of the protected classes.
The complainant thereby satisfied his burden of establishing a prima facie case. The plaintiff doesn't really challenge these findings. The burden then shifted to the respondent "to rebut the inference of discriminatory motive by producing clear and reasonably specific evidence to the contrary." Id.
The Commission rejected the respondent's claim that it did not know that Mr. Fennessee was blind and African-American or that his deposit was untimely. Since the plaintiff failed to call the one available witness, its own managing employee, who actually took the deposit from the white male sighted person, the Commission would have been justified in drawing an inference that his truthful testimony might have been adverse to the plaintiff.
It may be that a large portion of the plaintiff's business is with minorities. The evidence in this case shows that part of that business is helping to keep discrimination in housing a reality in Rhode Island. The Decision and Order of the Commission is affirmed.
The defendants will present a judgment for entry by this Court upon notice to the plaintiff.